```
1                  IN THE UNITED STATES DISTRICT COURT

2              FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

3
   United States of America       :
4                                  :
                                   :
5          vs                      :   4:17-CR-0262
                                   :
6                                  :
   Jared Marc Brown               :
7

8

9

10

11          BEFORE:        HONORABLE MATTHEW W. BRANN

12          PLACE:         Williamsport, Pennsylvania

13          PROCEEDINGS:   Change of Plea/Sentencing

14          DATE:          Tuesday, June 11, 2019

15

16

17

18

19   APPEARANCES:

20   For the United States:   James T. Clancy, Esquire
                              U.S. ATTORNEY'S OFFICE
21                            228 Walnut Street, Suite 220
                              Harrisburg, PA  17108
22

23   For the Defendant:       Gerald A. Lord, Esquire
                              FEDERAL PUBLIC DEFENDER'S OFFICE
24                            330 Pine Street, Suite 302
                              Williamsport, PA  17701
25
```

1                      (10:20 a.m., convene.)

2          THE COURT:  The first matter before the Court today is

3   that of the United States of America against Jared Marc Brown,

4   docketed in this court at criminal number 4:17-CR-00262.

5          The Court notes the presence of Assistant United

6   States Attorney James T. Clancy, counsel for the defense,

7   Assistant Federal Public Defender Gerald A. Lord, as well as

8   the defendant, Jared Marc Brown.

9          Mr. Brown, good morning to you, sir.

10          THE DEFENDANT:  Good morning.

11          THE COURT:  Counsel, is this matter before the Court

12   today for a change of plea to guilty and then to proceed into

13   sentencing?  Mr. Clancy.

14          MR. CLANCY:  That is correct, Your Honor.

15          THE COURT:  Mr. Lord, do you agree?

16          MR. LORD:  I do, Your Honor.

17          THE COURT:  Very well.  I note then for the record

18   that I'm addressing this defendant personally in open court and

19   pursuant to Federal Rule of Criminal Procedure 11(b)(1).

20          Mr. Brown, before I can accept your plea of guilty

21   with respect to the charge that has been brought against you in

22   this case charges, it is necessary for me to establish under

23   Federal Rule of Criminal Procedure 11 that you fully and

24   completely understand your rights under the law and that you

25   understand the consequences of a guilty plea.

1          Do you understand that, sir?

2          THE DEFENDANT:  Yes, Your Honor.

3          THE COURT:  You are going to be placed under oath

4   momentarily.  I'm going to ask certain questions of you.  You

5   should be advised if you give me any false answers while under

6   oath that you could be subject to further prosecution for

7   perjury or for making false statements to the Court.

8          Do you understand that, sir?

9          THE DEFENDANT:  Yes, Your Honor.

10          THE COURT:  If you do not hear or you do not

11   understand one of my questions, please interrupt me, and I will

12   repeat or rephrase my question.  And therefore, if you respond

13   to one of my questions, I am going to assume that you have both

14   heard and understood it.

15          Do you understand that, sir?

16          THE DEFENDANT:  Yes, Your Honor.

17          THE COURT:  You may speak to your attorney, Mr. Lord,

18   at any time.  You may speak to Mr. Lord privately, if you wish

19   to do so.  Do you understand that, sir?

20          THE DEFENDANT:  Yes, sir.

21          THE COURT:  Mrs. Rhinehart, administer the oath now to

22   this defendant, please.

23          THE COURTROOM DEPUTY:  Would you please stand and

24   raise your right hand?

25                    (The defendant was sworn.)

1             THE DEFENDANT:  I do.

2             THE COURTROOM DEPUTY:  Please state your full name.

3             THE DEFENDANT:  Jared Marc Brown.

4             THE COURTROOM DEPUTY:  Thank you.  You may be seated.

5             THE COURT:  Mr. Brown, you've been placed under oath.

6     I'm now going to ask certain questions of you in what is called

7     a plea colloquy.  The questions are not meant to insult your

8     intelligence.  They are merely basic questions that I, and all

9     other federal district judges, must ask in order to comply with

10    the federal rules.

11            State your name again for the record, please.

12            THE DEFENDANT:  Jared Marc Brown.

13            THE COURT:  Can you read, write and converse in the

14    English language?

15            THE DEFENDANT:  Yes, Your Honor.

16            THE COURT:  How old are you, sir?

17            THE DEFENDANT:  Twenty-two.

18            THE COURT:  What is your educational background?

19            THE DEFENDANT:  I never finished high school.

20            THE COURT:  What grade did you get to, sir?

21            THE DEFENDANT:  Tenth.

22            THE COURT:  Where were you born?

23            THE DEFENDANT:  Buffalo, New York.

24            THE COURT:  You're a citizen then of the United

25    States?

1          THE DEFENDANT:  Yes, Your Honor.

2          THE COURT:  Have you received a copy of the

3   indictment; that is to say, the written charges made against

4   you in this case by the Government of the United States?

5          THE DEFENDANT:  Yes, Your Honor.

6          THE COURT:  Have you had sufficient time to review

7   this charge against you with your attorney, Mr. Lord?

8          THE DEFENDANT:  Yes, Your Honor.

9          THE COURT:  And have you fully discussed that charge

10  and the case in general with Mr. Lord?

11          THE DEFENDANT:  Yes, Your Honor.

12          THE COURT:  Do you understand the charge that is made

13  against you by the Government?

14          THE DEFENDANT:  Yes, Your Honor.

15          THE COURT:  Do you wish to have that charge read to

16  you now in open court?

17          THE DEFENDANT:  No, Your Honor.

18          THE COURT:  Has Mr. Lord explained your trial rights

19  and defenses that you could bring to this charge?

20          THE DEFENDANT:  Yes, Your Honor.

21          THE COURT:  You are fully satisfied with the legal

22  representation you've received to date from Mr. Lord?

23          THE DEFENDANT:  Yes, Your Honor.

24          THE COURT:  Mr. Brown, are you currently taking any

25  prescription medication?

1              THE DEFENDANT:  Yes, Your Honor.

2              THE COURT:  What is that?

3              THE DEFENDANT:  On Olanzapine and lithium.

4              THE COURT:  And what effect do these medications have

5      on your thinking, your understanding or your judgment?

6              THE DEFENDANT:  They don't have no effect.

7              THE COURT:  Have you had any drugs or alcohol either

8      today or yesterday?

9              THE DEFENDANT:  No, Your Honor.

10             THE COURT:  Have you been treated recently for drug

11     addiction?

12             THE DEFENDANT:  No, Your Honor.

13             THE COURT:  Have you been treated recently for alcohol

14     addiction?

15             THE DEFENDANT:  No, Your Honor.

16             THE COURT:  Have you been treated recently for mental

17     illness?

18             (Off-the-record discussion held between the

19     defendant and defense counsel.)

20             THE DEFENDANT:  Yes, Your Honor.

21             THE COURT:  And did that treatment result in the

22     prescription for the medications that you previously discussed

23     with me?

24             THE DEFENDANT:  No, Your Honor.

25             THE COURT:  Would you describe then your treatment --

```
 1   your recent treatment for mental illness?

 2          THE DEFENDANT:  What did you say, Your Honor?

 3          THE COURT:  Would you describe for me then your recent

 4   treatment for mental illness?

 5          Mr. Lord, maybe you can assist.

 6          MR. LORD:  Yes, Your Honor.  My client underwent, as

 7   the Court knows, several psychological evaluations.  He had

 8   been subject to some evaluations earlier in life.  So in a

 9   broad context, that's the extent of his treatment for mental

10   illness.

11          THE COURT:  Very good.  Thank you.

12          Mr. Brown, do you understand what is happening today

13   and why you are appearing before me in federal district court?

14          THE DEFENDANT:  Yes, Your Honor.

15          THE COURT:  Are you able to concentrate on what I am

16   saying to you today?

17          THE DEFENDANT:  Yes, Your Honor.

18          THE COURT:  Very well.  I'm satisfied this defendant

19   is currently competent to plead guilty.

20          Mr. Brown, if you were to persist in your plea of not

21   guilty, you would have the right to a jury trial.  Let me

22   explain that right to you.

23          You are entitled to a jury trial in which you, through

24   your attorney, Mr. Lord, would select a jury consisting

25   typically of 12, but never fewer than six, persons to sit as a
```

1    jury to hear the facts of this case.

2          At trial, the Government of the United States has the

3    burden of proving each and every element of the crime charged

4    against you beyond a reasonable doubt.

5          You are presumed innocent during these proceedings

6    unless and until the Government proves the charge against you

7    beyond a reasonable doubt.

8          At trial, you would have the right, again through your

9    attorney, Mr. Lord, to confront witnesses against you by what

10   is called cross-examination.  At trial, you would have the

11   right to subpoena witnesses and evidence in support of your

12   plea of not guilty.  At trial, you would have the right to, but

13   would not be required to, testify on your own behalf.  If you

14   decide not to testify or set forth any evidence, that decision

15   cannot be used against you.

16         To find you guilty, the verdict must be unanimous;

17   that is to say, all jurors would have to agree.  If you give up

18   your right to a jury trial by pleading guilty before the Court

19   this morning, you are giving up your right to present any

20   defenses you may have and your right to appeal any pretrial

21   matters.

22         Having explained that to you, sir, do you understand

23   your right to a jury trial?

24         THE DEFENDANT:  Yes, Your Honor.

25         THE COURT:  Do you understand further that you have a

1    right to persist with your not guilty plea and to proceed with

2    a jury trial in this matter?

3            THE DEFENDANT:  Yes, Your Honor.

4            THE COURT:  Do you understand that you have a right to

5    be represented by a lawyer at all stages of this proceeding,

6    including trial, should you choose not to plead guilty today?

7            THE DEFENDANT:  Yes, Your Honor.

8            THE COURT:  Do you understand further that by pleading

9    guilty, you will waive your right to a jury trial?

10           THE DEFENDANT:  Yes, Your Honor.

11           THE COURT:  Do you wish to waive that right and

12    continue with the guilty plea today?

13           THE DEFENDANT:  Yes, Your Honor.

14           THE COURT:  Very well.  Mr. Brown, I understand that

15    you are pleading guilty to count one of the indictment, which

16    charges you with threatening the life of the President of the

17    United States, a violation of Title 18 of the United States

18    Code at Section 871.

19           Do you understand, sir, that the statutory maximum

20    term of imprisonment under the United States Code for that

21    offense is five years, together with a fine of $250,000, a

22    maximum term of supervised release of three years, the costs of

23    prosecution, denial of certain federal benefits, and a $100

24    special assessment?

25           Do you understand that, Mr. Brown?

1          THE DEFENDANT:  Yes, Your Honor.

2          THE COURT:  Do you understand that the term of

3    supervised release is served after any term of imprisonment

4    imposed?

5          THE DEFENDANT:  Yes, Your Honor.

6          THE COURT:  Do you understand that if you violate the

7    terms of supervised release you may be required then to return

8    to prison?

9          THE DEFENDANT:  Yes, Your Honor.

10          THE COURT:  Do you understand that this Court has the

11    authority to order restitution, if applicable, to be paid to

12    any victims of this crime?

13          THE DEFENDANT:  Yes, Your Honor.

14          THE COURT:  Do you understand that this Court is

15    obligated to impose a $100 special assessment in this case?

16          THE DEFENDANT:  Yes, Your Honor.

17          THE COURT:  Do you understand that there are

18    sentencing guidelines that I must consider in passing sentence

19    on you?

20          THE DEFENDANT:  Yes, Your Honor.

21          THE COURT:  Have you and Mr. Lord discussed the

22    sentencing guidelines that might apply in this case?

23          THE DEFENDANT:  Yes, Your Honor.

24          THE COURT:  Mr. Lord, based upon what you know about

25    the case today, which is everything really, what did you

1   estimate that guideline to be?

2          MR. LORD:  Your Honor, I estimated the base offense

3   level to be 12.  My client has a criminal history category of

4   six.  So he begins with a level of 30 to 37 months.  And if he

5   receives credit for acceptance of responsibility, that lowers

6   to 24 to 30 months.

7          THE COURT:  Mr. Clancy, do you agree with that

8   estimated guideline range, again based upon what you and your

9   office know about the case today, which is everything?

10         MR. CLANCY:  Your Honor, based on what I know about

11  the case today, I disagree with Mr. Lord.  I know Mr. Vought

12  from the probation office has prepared a guidelines estimate

13  that puts the guideline range at 57 to 60 months, capped at the

14  statutory maximum 60 months.  The Government agrees with that

15  calculation.

16         THE COURT:  Thank you.  Mr. Brown, if I determine that

17  your guideline sentence is different from what has been

18  estimated to you today, you cannot withdraw your guilty plea.

19         Do you understand that, sir?

20         THE DEFENDANT:  Yes, Your Honor.

21         THE COURT:  Do you understand, however, that your

22  guideline sentence cannot exceed the statutory maximum sentence

23  of five years of imprisonment?

24         THE DEFENDANT:  Yes, Your Honor.

25         THE COURT:  A prior criminal conviction may increase

1    your guideline range.  Do you understand that?

2              THE DEFENDANT:  Yes, Your Honor.

3              THE COURT:  Have you ever before been on supervision

4    for a crime such as probation, parole, supervised release or

5    ARD?

6              THE DEFENDANT:  Yes, Your Honor.

7              THE COURT:  If you were on supervision when you

8    committed this present offense, your plea of guilty today would

9    be an admission that you violated that supervision.

10             Do you understand that?

11             THE DEFENDANT:  Yes, Your Honor.

12             THE COURT:  Mr. Brown, a United States probation

13   officer within this federal district must conduct a

14   pre-sentence investigation and submit a report to the Court

15   before it imposes sentence, unless the Court finds that the

16   information in the record enables it to meaningfully exercise

17   its sentencing authority under Title 18 of the United States

18   Code at Section 3553, and the Court explains its findings on

19   the record.

20             Given the information in the record, I will not order

21   a full pre-sentence investigation and report to be done in your

22   case.  Do you understand that?

23             THE DEFENDANT:  Yes, Your Honor.

24             THE COURT:  Do you understand further that your

25   attorney, Mr. Lord, and counsel for the Government can agree on

1    facts and make recommendations, motions and requests at the

2    time of sentencing, but that I do not have to do what they ask

3    me to do?

4            THE DEFENDANT:  Yes, Your Honor.

5            THE COURT:  Your plea of guilty will be binding on you

6    whether or not I agree with their facts and recommendations at

7    the time of sentencing.  Do you understand that?

8            THE DEFENDANT:  Yes, Your Honor.

9            THE COURT:  Do you understand that the guideline

10   sentencing range is advisory only, that after your guideline

11   range has been determined, the Court has the authority to

12   impose a sentence that is more severe or less severe than the

13   sentence prescribed by the guidelines?

14           THE DEFENDANT:  Yes, Your Honor.

15           THE COURT:  Do you understand that there is no parole

16   in the federal system, and you must serve the entire term of

17   imprisonment to which you are sentenced?

18           THE DEFENDANT:  Yes, Your Honor.

19           THE COURT:  Do you further understand that no one can

20   guarantee you what sentence you will receive from me?

21           THE DEFENDANT:  Yes, Your Honor.

22           THE COURT:  Do you understand that you may be able to

23   appeal your sentence to a higher federal court, the Court of

24   Appeals, that could modify or set aside the sentence or order

25   me to resentence you?

1              THE DEFENDANT:  Yes, Your Honor.

2              THE COURT:  The Government may also be able to appeal

3    your sentence.  Do you understand that?

4              THE DEFENDANT:  Yes, Your Honor.

5              THE COURT:  You stated previously that you are a

6    citizen of the United States, that you were born in Buffalo,

7    New York.  Do I have that right?

8              THE DEFENDANT:  Yes, Your Honor.

9              THE COURT:  My understanding is that there is no plea

10   agreement in this matter.  So I have a few questions for

11   counsel and then for you, Mr. Brown.

12             Mr. Clancy, have there been one or more formal plea

13   offers extended by the Government in this case?

14             MR. CLANCY:  Yes, Your Honor.

15             THE COURT:  And can you describe for the Court the

16   terms of any formal offers?

17             MR. CLANCY:  I can, Your Honor.  There was one formal

18   offer.  That offer resulted from a long discussion between me

19   and Mr. Lord, and that offer anticipated a plea to the charge

20   and credit for acceptance of responsibility and a

21   recommendation of a time served sentence.

22             That offer was signed by Mr. Brown and Mr. Lord.  It

23   was sent through the approval process in my office, and it was

24   rejected, largely in part because during the plea negotiation

25   process, Mr. Brown engaged in conduct that led to another

1    federal charge in the Western District of New York, having to

2    do with threatening the judge who sentenced him in his prior

3    case, the judge's family and the Secret Service agent

4    investigating the case.

5            So that was the one offer, Your Honor.  It was

6    rejected when signed.  That is where we stand.

7            THE COURT:  Good.  Thank you.

8            Mr. Lord, do you agree that there was a formal plea

9    offer made in this case?

10           MR. LORD:  I do, Your Honor.

11           THE COURT:  Mr. Lord, do you agree with the proposed

12   terms that Mr. Clancy set forth and apparently were

13   memorialized?

14           MR. LORD:  Yes.  In addition to that, there was a

15   waiver of appeal, Your Honor.

16           THE COURT:  Thank you.  Mr. Lord, did you communicate

17   that offer with those proposed terms to Mr. Brown?

18           MR. LORD:  I did.

19           THE COURT:  From what Mr. Clancy has indicated to the

20   Court, Mr. Brown accepted that offer.

21           MR. LORD:  He did.  He signed it on March 29, mailed

22   it back to me, and I signed it and submitted it to the U.S.

23   Attorney's Office.

24           THE COURT:  And Mr. Clancy, do you agree that Mr. Lord

25   informed you that Mr. Brown had rejected -- excuse me -- had

1    accepted that offer?

2          MR. CLANCY:  I certainly do, Your Honor.

3          THE COURT:  Mr. Brown, do you agree that Mr. Lord

4    informed you of the formal offers extended to you by the

5    Government through Mr. Clancy, who is the assistant United

6    States attorney prosecuting this case?

7          THE DEFENDANT:  Yes, Your Honor.

8          THE COURT:  And Mr. Brown, do you agree with your

9    attorney as to the proposed terms of the offer that was recited

10   momentarily to the Court by Mr. Clancy?

11         THE DEFENDANT:  Yes, Your Honor.

12         THE COURT:  And do you agree that you accepted that

13   offer?

14         THE DEFENDANT:  Yes, Your Honor.

15         THE COURT:  And your understanding, further, is that

16   the Government later simply withdrew that offer for the reasons

17   that Mr. Clancy has set forth to the Court this morning?

18         THE DEFENDANT:  Yes, Your Honor.

19         THE COURT:  Thank you.  And before accepting or

20   rejecting the offer, did you discuss the offer with your

21   attorney, Mr. Lord?

22         THE DEFENDANT:  Yes, Your Honor.

23         THE COURT:  And were you satisfied with the legal

24   advice provided to you at that time by Mr. Lord?

25         THE DEFENDANT:  Yes, Your Honor.

1            THE COURT:  Thank you.  Would you agree further,

2    Mr. Brown, that your decision to reject the offer or accept the

3    offer, in this case accept it, was an informed and an

4    intelligent decision made of your own free will after

5    considering the legal advice of Mr. Lord?

6            THE DEFENDANT:  Yes, Your Honor.

7            THE COURT:  Mr. Lord, are you satisfied that your

8    client's decision to accept the plea offer was an informed and

9    intelligent decision, made of his own free will after

10   considering the legal advice that you provided him?

11           MR. LORD:  Yes, I am, Your Honor.

12           THE COURT:  Thank you.

13           Mr. Clancy, are you satisfied that Mr. Brown's

14   decision to accept the plea offer, as extended at that time,

15   was an informed and intelligent decision made of Mr. Brown's

16   own free will after considering the legal advice extended to

17   him by his counsel?

18           MR. CLANCY:  I do, Your Honor.

19           THE COURT:  Thank you.

20           Mr. Brown, did anyone promise or offer you anything

21   other than the written plea agreement that has been discussed

22   with the Court in order to get you to plead guilty today?

23           THE DEFENDANT:  No, Your Honor.

24           THE COURT:  Have there been any threats made against

25   you or made against any member of your family that caused you

1    or forced you to plead guilty before the Court today?

2              THE DEFENDANT:  No, Your Honor.

3              THE COURT:  Are you pleading guilty then of your own

4    free will?

5              THE DEFENDANT:  Yes, Your Honor.

6              THE COURT:  Do you understand, sir, that you are

7    entering a plea of guilty to a felony which may deprive you of

8    valuable civil rights, such as the right to vote, the right to

9    hold public office, the right to serve on a jury, the right to

10   possess a firearm or the right to hold a professional license?

11             THE DEFENDANT:  Yes, Your Honor.

12             THE COURT:  Do you understand that as a consequence of

13   your guilty plea, you may be required then to submit to DNA

14   sampling?

15             THE DEFENDANT:  Yes, Your Honor.

16             THE COURT:  Thank you.

17        Mr. Clancy, would you place on the record now the

18   facts that you and your office would present in order to

19   support the charge made against Mr. Brown?

20             MR. CLANCY:  Certainly, Your Honor.

21        If this matter proceeded to trial, the United States

22   would be prepared to prove that in June of 2017 the defendant

23   was an inmate at the United States Penitentiary at Allenwood,

24   Pennsylvania, within the Middle District of Pennsylvania,

25   serving a supervised release revocation sentence imposed in the

1   Western District of New York related to a conviction for making

2   a threat to kill the President of the United States in 2015.

3           On or about June 14, 2017, the defendant sent an

4   e-mail within the prison system stating his intent to blow up

5   the prison and kill both Donald Trump and Barack Obama.

6           A search of Mr. Brown's cell revealed a note in which

7   he stated he would kill both Trump and Obama, as well as the

8   Secret Service agent involved in his New York case.

9           The matter was referred to Secret Service through the

10  Federal Bureau of Investigation.  The defendant was interviewed

11  by Secret Service agents and admitted making the threats.  He

12  backed off the threat against President Obama, because he was

13  no longer in office.  He would not, however, retract the threat

14  against President Trump or the Secret Service agent.

15          That, in essence, would be the Government's proof to

16  support the charge against the defendant, Your Honor.

17          THE COURT:  Very good, sir.  Thank you.

18          Mr. Brown, do you fully admit to those facts as

19  recited now to the Court by the Assistant United States

20  Attorney?

21          THE DEFENDANT:  Yes, Your Honor.

22          THE COURT:  Mr. Brown, with all of the information I

23  have reviewed with you thus far, is it still your desire to

24  plead guilty before the Court today?

25          THE DEFENDANT:  Yes, Your Honor.

1          THE COURT:  Are you pleading guilty because you are,

2   in fact, guilty?

3          THE DEFENDANT:  Yes, Your Honor.

4          THE COURT:  Are you willing to waive your right to a

5   trial by a jury of your peers?

6          THE DEFENDANT:  Yes, Your Honor.

7          THE COURT:  Mr. Brown, do you now plead guilty?

8          THE DEFENDANT:  Yes, Your Honor.

9          THE COURT:  Very well.  The Court makes the following

10   finding; that the defendant, Jared Marc Brown, is fully alert,

11   competent and capable of entering of an informed plea.  This

12   plea is a knowing and a voluntary plea supported by an

13   independent basis in fact, containing each of the essential

14   elements of the offense pled to.

15          Mr. Brown's plea is, therefore, accepted and he is now

16   adjudged guilty of this offense.

17          For the record, I note the guilty plea form has been

18   signed by the defendant and is accepted now by the Court.

19          The Court will enter an order now memorializing these

20   findings.  The Court finds that this defendant is acting

21   voluntarily and not as a result of force or threats or

22   promises, that he understands his rights and he understands the

23   consequences of his plea, and he voluntarily waives his right

24   to trial.

25          The Court finds that the plea has a basis in fact.

1    The Court accepts the plea of guilty to count one of the

2    indictment.

3           Counsel, are there any other matters regarding

4    Mr. Brown's change of plea that should be dealt with now before

5    we move on to sentencing?  Mr. Clancy?

6           MR. CLANCY:  No, Your Honor.

7           THE COURT:  Mr. Lord?

8           MR. LORD:  No, Your Honor.

9           THE COURT:  Thank you.

10          We'll proceed now to sentencing in this matter.

11          Mr. Brown, your counsel, Mr. Lord, filed a motion to

12   waive a pre-sentence investigation and report and proceed

13   directly to sentencing during this hearing today.

14          Do you still wish to proceed directly to sentencing at

15   this hearing?

16          THE DEFENDANT:  Yes, Your Honor.

17          THE COURT:  In accordance with Federal Rule of

18   Criminal Procedure 32(c)(1)(A)(2), I find that the information

19   in the record enables the Court to meaningfully exercise its

20   sentencing authority under Title 18 of the United States Code

21   at Section 3553.

22          On August 31, 2016, the probation office of the United

23   States District Court for the Western District of New York

24   conducted a pre-sentence investigation and prepared a report

25   which was disseminated to Mr. Brown and his then counsel.

1    Mr. Brown was later sentenced to 15 months of imprisonment by

2    the Western District of New York for making threats against the

3    President, in violation of Title 18 of the United States Code

4    at Section 871(a).

5           Both Mr. Brown and Mr. Lord and Mr. Clancy have

6    represented to the Court that they have a copy of that

7    presentence report.

8           In preparing Mr. Brown for sentencing in the instant

9    matter, the probation officer for the Middle District of

10   Pennsylvania has provided both parties and the Court a modified

11   pre-sentence report that incorporates information set forth in

12   the Western District of New York pre-sentence report and

13   provides additional information not contained therein,

14   including information regarding the instant offense conduct,

15   updates to Mr. Brown's criminal record and his guidelines

16   calculation.

17          His modified pre-sentence report, together with the

18   pre-sentence report from the Western District of New York,

19   provides the Court with sufficient information, pursuant to

20   Federal Rule of Criminal Procedure 32 and Title 18 of the

21   United States Code at Section 3553, to impose sentence, and

22   accordingly, renders the preparation of a full pre-sentence

23   investigation report unnecessary.

24          Therefore, we will proceed directly now to sentencing.

25          Mr. Brown, I have the unfortunate task of passing

1    sentence on you in this criminal matter today.  I note for the

2    record that I have just accepted your guilty plea to count one

3    of the indictment, threatening the life of the President of the

4    United States, a violation of Title 18 of the United States

5    Code at Section 871.

6           Mr. Clancy, have you had an opportunity to review the

7    modified pre-sentence report that I have referenced?

8           MR. CLANCY:  I have, Your Honor.

9           THE COURT:  Are there any unresolved objections from

10   the Government's perspective?

11          MR. CLANCY:  No, Your Honor.

12          THE COURT:  Mr. Lord, likewise, have you had an

13   opportunity to review the modified pre-sentence report?

14          MR. LORD:  I have Your Honor.

15          THE COURT:  Are there any unresolved objections from

16   the defense perspective?

17          MR. LORD:  Well, just as the Court heard earlier, I

18   don't believe that there's a plus six attached to the guideline

19   U.S.S.G. A1.2.  I'll give the Court my reasons when the time

20   comes.

21          THE COURT:  Yes.  And that will be momentarily.

22          MR. LORD:  Yes, Your Honor.

23          THE COURT:  But you agree there are some unresolved

24   objections that should be addressed before imposing sentence?

25          MR. LORD:  Yes, Your Honor.

1              THE COURT:  Mr. Brown, have you had an opportunity,

2    with Mr. Lord's assistance, to review the modified pre-sentence

3    report?

4              THE DEFENDANT:  Yes, Your Honor.

5              THE COURT:  Do you agree with your attorney that there

6    are some unresolved objections that he will be addressing with

7    the Court momentarily?

8              THE DEFENDANT:  Yes, Your Honor.

9              THE COURT:  Thank you.

10             Before I proceed to address those objections, let me

11   take a moment, Mr. Brown, to explain what is going to happen in

12   this courtroom today.

13             In accordance with two cases; the first entitled Gall

14   against the United States, and the second entitled Nelson

15   against the United States, this Court is required to engage in

16   a three-step process at this sentencing hearing.

17             First, I will calculate the advisory guideline range

18   based on the sentencing guidelines promulgated by the United

19   States Sentencing Commission.

20             Second, I will formally rule on any motions for

21   departure, if there are any, and state the impact, if any, of

22   any such ruling on the guideline calculation.

23             And third, I'm required to exercise discretion and

24   consider the factors set forth at Title 18 of the United States

25   Code at Section 3553(a) in fixing a sentence, which may vary

1     from the advisory guideline range.

2              Following the decision of the United States Supreme

3     Court in the matter of United States against Booker, the

4     sentencing guidelines are to be treated as advisory rather than

5     as mandatory.  Therefore, although I'm required to start with

6     the guidelines as an initial benchmark, I will not presume that

7     the guidelines range is reasonable.  Rather, I will make an

8     individualized assessment based upon the facts presented.

9              So if I understand it correctly, Mr. Lord, you have

10    really two objections to the modified pre-sentence report.

11    First, you are going to object to the six-level victim-related

12    enhancement, which has bumped Mr. Brown's offense level from 12

13    to 18; and second, you wish to argue that Mr. Brown deserves a

14    two-point reduction for acceptance of responsibility, which the

15    probation officer for this district determined that Mr. Brown

16    was entitled to no reduction.

17             Would you care to make argument?

18             MR. LORD:  Yes.  Thank you.  May it please the Court.

19    I'll address the enhancement under 3A1.2 first, Your Honor.

20             Pursuant to the United States Sentencing Guideline

21    2A6.1, the base offense level for this particular offense is

22    12.  And in the commentary, statutory provisions, there are a

23    number of offenses laid out there, starting from 18 U.S.C.

24    32(c) and going all the way to 49 U.S.C. 46507.

25             I had occasion to look over those particular statutes

1    before today's proceeding, Your Honor, and I did some research

2    in connection with the charge under 18 U.S.C., Section 871.

3    And I have had difficulty -- I have had difficulty aligning the

4    guideline under 3A1.2 with this particular offense, and I'll

5    tell the Court the reasons why.

6         The first reason is, 3A1.2, official victim, states in

7    (a) and (b) that if the victim was a government officer or

8    employee, or former officer or employee, or a member of the

9    immediate family, and the offense of conviction was motivated

10   by such status, increase by three levels.

11        Significantly, if both (a)(1) and (a)(2) apply, then

12   there's an increase by six levels.  And obviously the President

13   of the United States could be viewed as an official victim.

14   But I note some differences between this particular charge and

15   most of the other ones under the commentary.  These charges

16   range from threat to destroy aircraft to mailing threatening

17   communications from a foreign country, threatening foreign

18   officials and conveying false information related to terrorist

19   attacks.

20        The interesting thing about most of these offenses is

21   they also come under the sentencing guideline having to do with

22   the same one that's 871.

23        However, if you look at these particular charges, most

24   of the ones in the commentary, there's an addition of levels,

25   because not only did you commit that offense but then again,

1   you did it against an official victim.  And therefore, that's a

2   basis to increase the base offense level by a certain amount of

3   points, three or six.

4        The charge to which my client pleaded guilty, 18

5   U.S.C., Section 871, has both of those conditions built into it

6   so that I can easily make the argument that every time somebody

7   is charged with a violation of 18 U.S.C. 871, there's an

8   automatic increase by six levels, because it's always the

9   President and it's always sentenced because of that status.

10       So I'm wondering why the Sentencing Commission would

11  not have put in 2A6.1 a base offense level of 12, except if

12  it's an official victim that is the President of the United

13  States; in that case it's an 18.

14       So I can't believe that the Sentencing Commission

15  envisioned that every time someone was charged with a violation

16  of 18 U.S.C., 871 that they automatically get a six-level

17  increase.  That could not have been their intent.

18       So that's one of the reasons I have a problem with

19  this victim-related adjustment under 3A1.2.  I had difficulty

20  finding any case law in which the plus six was applied.  And

21  there may be case law.  I just didn't see it.

22       I did find a case from the Seventh Circuit from 1990

23  in which the defendant was charged with a violation of 18

24  U.S.C., Section 871.  But what they did was they said he

25  wasn't -- the President didn't come under (a) -- he came under

1   (a)(1) or (2), he came under (a)(5), which states, "If the

2   official victim is an exceptionally high-level official, such

3   as the President or the Vice-President, an upward departure may

4   be warranted due to the potential disruption of the

5   governmental function."

6          So in that case, even though 3A1.2(a) and (b) were

7   still available, it was under (a)(5) that the Court imposed an

8   upward departure in that case.

9          And they did mention in that case that there's a

10  President, who's an official, whereas the language in (a) and

11  (b) have to do with officers or employees.  I tried to do some

12  research on how do you define a government officer or employee,

13  and I was unable to locate an answer about whether the

14  President is an employee or an officer.

15         THE COURT:  He is described as the chief executive

16  officer, isn't he?

17         MR. LORD:  The chief executive officer, yes.  But as

18  far as the interpretation of the Seventh Circuit case and the

19  fact that they applied (a)(5) and not (a)(1) or (2), I'm

20  wondering whether, as an official victim, he's a high-level

21  official as opposed to an officer or employee, whether that

22  should apply.

23         Again, going back to my original statement about this

24  and the reasoning of the Sentencing Commission, I find it hard

25  to believe that in a case of this nature, where the status of

1   the person who the victim and the fact that it is done because

2   of that status is built into the statute, why is he getting the

3   12 under 2A6.1 as an automatic six under 3A1.2.

4          I don't have a copy of the sentencing guidelines from

5   1990 but --

6          THE COURT:  There's a reasonable bet that he does.

7          MR. LORD:  The case I was referencing, the Seventh

8   Circuit case, is United States verses McKleb, M-c-K-L-E-B, and

9   the guidelines were a little bit different back then.  But it

10  acknowledged that the defendant pleaded guilty to 18 U.S.C.,

11  Section 871, and there were actually six levels added in that

12  case because there was an intent to carry out the threat that

13  was found.

14         But there was also a final calculation that included

15  an upward departure of three levels because the object of the

16  threat was the President.  And they noted in there, as written

17  back then, that the guideline acknowledges the absence of

18  certain high-official levels, notably the President and

19  Vice-President, from this adjustment.

20         The language written back then may not be relevant for

21  the purposes of the way it was written today.  But I just found

22  it interesting that I did not -- I'm not saying there are not

23  any cases out there, I just found it interesting that there are

24  no cases at the Third Circuit level, or the United States

25  Supreme Court level, where there was a charge of 18 U.S.C.,

1    Section 871 and there was a six-level enhancement under 3A1.2.

2              So I would take the position, Your Honor, that the

3    base offense level should remain at 12 and that there should

4    not be a six-level increase under 3A1.2 (a) and (b).  I would

5    like the Court to consider that particular argument here today.

6    So that's my argument for the six-level increase, Your Honor.

7              THE COURT:  That's fine.  Do you want to address, at

8    the same time, the two-point reduction for acceptance of

9    responsibility?

10             MR. LORD:  Thank you, Your Honor.  Yes, I will.

11             THE COURT:  Mr. Vought, from the probation office, has

12   determined that there is no reduction.  And I'll have

13   Mr. Clancy respond to both.  Do you want to address that, as

14   well?

15             MR. LORD:  Thank you, Your Honor.  I will.  So, under

16   U.S.S.G. 3E1.1, if a defendant clearly demonstrates acceptance

17   of responsibility, the offense level is increased by two

18   levels.  In the commentary, application notes 1(a) through (h),

19   the Sentencing Commission lists various factors the Court can

20   consider in determining whether or not the defendant has

21   accepted responsibility.

22             Noting that, as it says in application note five, the

23   sentencing judge is in a unique position to evaluate a

24   defendant's acceptance of responsibility.  For this reason, the

25   determination of the sentencing judge is entitled to great

deference on review.

Now, some of these factors under application note one are really not applicable in this case, because my client wasn't out on pretrial release, and there were not any voluntary surrender problems or voluntary payment problems.

Yes, voluntary termination or withdrawal from criminal conduct or associations is mentioned in there as one factor the Court must consider.  But it's not end all/be all.  And if the defendant is found not to have withdrawn the conduct, he, therefore, is not entitled to a two-level decrease.

There are other factors the Court can consider.  Some of the ones that are listed under application note one do apply to Mr. Brown.  One is truthfully admitting the conduct comprising the offense of conviction and truthfully admitting or not falsely denying any additional relevant conduct with which the defendant is accountable.

As Mr. Clancy mentioned, when he laid out the facts supporting the plea here today, when my client was approached by law enforcement officers, he didn't deny anything.  He agreed that he committed the conduct.

Now, there was mention made that he threatened Barack Obama, and then he withdrew that.  The context of that is he withdraw it because he's no longer president.  And he was asked well, what if Mr. Trump is surpassed by another individual and he becomes President.  He indicated he would withdraw the

1    threat against Mr. Trump and probably bring a threat against

2    the new president.

3           So I mean, it's criminal activity, of course, but it

4    also doesn't show any deep malice within the defendant's heart

5    against a particular individual, like Donald Trump and Barack

6    Obama, who, I think we can all agree, are two totally different

7    individuals with different personalities.

8           Another factor that somewhat applies is voluntary

9    assistance to authorities in recovery of the fruits and

10   instrumentalities of the offense.  Not so much present here,

11   but with my client's conduct when he was questioned and readily

12   admitting he didn't try to hide anything.  And I would glean

13   from his behavior in his admissions that he would have turned

14   over whatever other evidence there might be, had he had it in

15   his cell or anywhere else.

16          So like I mentioned, Your Honor, he, on March 29,

17   signed a plea agreement, and we were ready to proceed with the

18   plea.  When that plea agreement was rejected, he maintained

19   that he will still plead guilty.  He got charged with conduct

20   down in Virginia.  He pleaded guilty to it.  He's already been

21   sentenced on it.  So he took responsibility for that.  He's now

22   facing charges in New York.  These are all things that occurred

23   since he's been in prison.

24          And we don't know what's going to happen with that

25   case in Buffalo, New York.  There is an indictment.  There is

1    some factual data about it.  But that's a case for another day.

2          But in terms of acceptance of responsibility, I do

3    believe that the defendant has demonstrated by pleading guilty

4    here today, by signing the plea agreement, by accepting

5    responsibility for what he did down in Virginia, and readily

6    cooperating with authorities, the fact that he did not withdraw

7    from criminal conduct is not the deciding factor.

8          I mean, there are plenty of cases in the Middle

9    District, not the same as my client's -- there is not that many

10   of those types of cases out there.  But there is cases in the

11   Middle District.

12         Judge McClure, in a case, United States versus

13   Christian Alander, 4:CR-01-385, 2002, the defendant was not

14   supposedly eligible for acceptance; he used marijuana and

15   traveled outside of the district, in violation of his

16   conditions, and yet, he received a reduction for acceptance of

17   responsibility from Judge McClure.

18         Again, in 2004, Judge McClure gave a defendant an

19   acceptance of responsibility credit in the United States versus

20   Dade, D-A-D-E, 4:CR-01-198, despite his revocation of pretrial

21   release for drug use.

22         More recently, in 2012, Judge Jones, in United States

23   versus Johnson, 4:10-CR-259, the defendant received a two-level

24   reduction, even though the pre-sentence report denied

25   acceptance and the Government opposed acceptance.

1          And then in 2005, Judge Jones, in another case, the

2     United States versus Robbins, R-O-B-B-I-N-S, 4:CR-03-346, also

3     gave the defendant acceptance of responsibility credit, even

4     though he used cocaine while on release and he failed to report

5     to the U.S. Marshal as directed.

6          So as I mentioned earlier and the commentary brings

7     forth, this Court is in a unique position to make a decision

8     about whether Mr. Brown, considering all of these factors, has

9     accepted responsibility for the activity that he engaged in

10    that puts him before this Court today.

11         Despite the behavior of my client while in prison and

12    the criminal charges that he has incurred, as he sits before

13    you today, he's accepting full responsibility for what he did.

14    He is admitting it and has admitted it from the beginning.  And

15    I would ask the Court to consider giving him a two-level

16    decrease for acceptance of responsibility.

17         THE COURT:  Very good, sir.  Thank you.

18         Mr. Clancy, rebuttal.

19         MR. CLANCY:  Your Honor, thank you.  With respect to

20    the victim-related adjustments, I think Mr. Lord's questions

21    about why the Sentencing Commission did what it did are

22    answered by the guidelines themselves.  The case he refers to

23    dealt with a different version of the guidelines.  The

24    victim-related enhancement is now different.  It does not have

25    a separate section for a threat against the President.

1          And I think what the Commission did was left the

2     answer to the victim-related adjustment in section (3)(A).

3     This is clearly a case in which both elements of (3)(A) are

4     met, one and two.  And the offense is one, that is against the

5     person, from chapter two, part A, and the enhancement is

6     clearly applicable.  There is no reason for the Court not to

7     impose it.

8          With respect to the acceptance of responsibility

9     argument, there are several factors for the Court to consider,

10    and the Court has great discretion in this regard.  Two of

11    those factors particularly applicable to Mr. Brown are

12    voluntary termination or withdrawal from criminal conduct and

13    post-offense rehabilitative efforts.

14         And Mr. Brown not only engaged in criminal conduct but

15    engaged in the same kind of criminal conduct for which he was

16    charged in this district, for which he was charged and

17    convicted in New York before this offense, and now which he has

18    been charged with in New York again.

19         So from a cessation of criminal conduct perspective

20    and a post-conviction or post-arrest rehabilitative effort, he

21    has failed because of his own conduct.

22         Mr. Lord came up with a couple of cases where

23    acceptance of responsibility was granted despite those things.

24    I would venture to say that the list of cases in which judges

25    of this court have denied acceptance of responsibility in this

1   situation is much longer.  I think every judge of this court

2   has had cases where post-arrest criminal conduct has led to the

3   denial of acceptance of responsibility, and the Third Circuit

4   has approved of that exercise of discretion with respect to

5   post-arrest criminal conduct.

6          In a conversation that I had with Mr. Brown directly,

7   with Mr. Lord present, after my office rejected the plea

8   agreement, I said to him directly, all of the things that are

9   happening are happening because of your conduct.  And I think

10  it is his conduct, especially during the period of time when we

11  were trying to negotiate a plea agreement for his benefit, his

12  conduct in threatening that judge and the judge's family in New

13  York and the President and the Secret Service agent, while we

14  were trying to work out a resolution that would benefit him,

15  indicates that he is not worthy of acceptance of responsibility

16  as contemplated by guidelines.

17         So the Government would request that the Court

18  exercise its discretion to decline to give him acceptance of

19  responsibility credit.  Thank you.

20         THE COURT:  Very good, sir.  Thank you.

21         Mr. Lord, anything further on either of those

22  objections?

23         MR. LORD:  No, Your Honor.

24         THE COURT:  Mr. Vought and Ms. Caras, would you come

25  up for just a moment, please?  Put the white noise on.

1          (The following occurred at sidebar between Court and

2     probation officer and law clerk:)

3          THE COURT:  All right.  Counsel, thank you very much.

4     I'm going to overrule the objection as to the official victim

5     enhancement applied pursuant to United States Sentencing

6     Guideline 3A1.2.  United States Sentencing Guideline 3A1.2(b)

7     increases the offense level by six levels if the victim was a

8     government officer or employee, the offense of conviction is

9     motivated by such status and the applicable chapter two

10    guideline is from chapter two, part A.

11          Those are the circumstances that this Court confronts

12    here.  Mr. Brown threatened to kill the President of the United

13    States, and the applicable chapter two guideline is from

14    chapter two, part A.

15          For the record, I will advise counsel that I'm looking

16    specifically at two cases here that inform the Court's

17    thinking.  The first case is entitled United States against

18    Cousins -- for the reporter, C-O-U-S-I-N-S -- which is found,

19    Counsel, at 469 F.3d, page 572, specifically at page 575.  It's

20    a decision of the United States Court of Appeals for the Sixth

21    Circuit, a case from 2006.  So there Section 3A1.2(a) applied

22    threatening the President and the President's family.

23          Another case that I uncovered is entitled United

24    States against Dudley, D-U-D-L-E-Y, found at 463 F.3d, page

25    1,221, specifically page 1,227, a decision of the United States

1   Court of Appeals for the Eleventh Circuit from 2006, as well.

2   That applied Section 3A1.2(b) for sending death threats to a

3   federal judge.

4          I'm also going to overrule the objection as to whether

5   Mr. Brown warrants a two-level decrease for acceptance of

6   responsibility pursuant to United States Sentencing Guideline

7   3E1.1.  United States Sentencing Guideline 3E1.1(a) provides

8   that a district court may grant a two-level reduction in

9   offense level, quote, if the defendant clearly demonstrates

10  acceptance of responsibility for his offense, end quote.  And

11  the defendant bears the burden to show by a preponderance of

12  the evidence that such a reduction is appropriate.

13         Counsel, I am referencing for that proposition United

14  States against Boone, B-O-O-N-E, found at 279 F.3d, page 163, a

15  decision from our Court of Appeals from 2002.

16         Given the circumstances of this case, I cannot

17  conclude that Mr. Brown has met that burden to clearly

18  demonstrate acceptance of responsibility.

19         Since he was indicted on the instant charge in August

20  of 2018, Mr. Brown has had four incidents of misconduct for

21  behavior similar in nature to the instant offense.  For

22  example, on January 27, 2019, during pretrial detention he

23  wrote quote, I will kill Trump, end quote, on his cell walls

24  with his own feces.

25         On May 7, 2019, he was indicted in the United States

1    District Court for the Western District of New York and charged

2    with making threats against the President, retaliating against

3    a United States judge, the family of a United States judge and

4    a Secret Service agent and mail threatening communication

5    containing a threat to injure the President.

6          These acts are inconsistent with acceptance of

7    responsibility that's contemplated, I believe, by United States

8    Sentencing Guideline 3E1.1.

9          However, I note that by pleading guilty today,

10   Mr. Brown has evidenced some willingness to accept

11   responsibility for his actions, and consequently, his plea does

12   relieve the burden of the Government of the burden of proof at

13   the time of trial.  So rather than applying a two-level

14   decrease under United States Sentencing Guidelines 3E1.1, this

15   Court will consider evidence of Mr. Brown's acceptance of

16   responsibility as a mitigating factor when determining his

17   sentence.

18         So having resolved all objections to the modified

19   pre-sentence report, this defendant has a criminal history

20   category of six, he has an offense level of 18, his guideline

21   range of imprisonment is 57 to 60 months.

22         I will state for the record that there are no motions

23   for departure.

24         Mr. Lord, am I correct in making that statement?

25         MR. LORD:  Yes, Your Honor.

1          THE COURT:  And you agree, Mr. Clancy?

2          MR. CLANCY:  I agree.

3          THE COURT:  Accordingly then, this Court will adopt

4    both the factual findings, together with the guideline

5    calculation in the pre-sentence report in their entirety.

6          As I noted a moment ago, the criminal history for

7    Mr. Brown is six.  His offense level is 18.  The guideline

8    range of imprisonment is 57 to 60 months.

9          Mr. Vought, do you agree that that calculation is

10   correct as stated by the Court?

11         PROBATION OFFICER VOUGHT:  I do, Your Honor.

12         THE COURT:  All right.

13         Mr. Lord, what would you care to say this morning on

14   behalf of Mr. Brown?

15         MR. LORD:  Yes, Your Honor.  Thank you very much.  I'm

16   going to make a few comments, Your Honor.  I will note that my

17   client's sister, Kristin Allen, is here and I'm going to ask

18   her to come forward at one point and stand at the podium and

19   read a letter she wrote, and I'm going to read something that

20   Gloria Brown, my client's mother, sent to me, as she is shy,

21   and I will just read that I note.  And I know Mr. Brown wants

22   to address the Court, as well.

23         THE COURT:  That's fine.  Go right ahead.

24         MR. LORD:  So as the Court knows, this case has been

25   around for a couple of years.  I got involved in it when I took

1   on the position of assistant federal public defender in

2   December.  And I met Mr. Brown for the first time in person

3   when he was in a cell at the Columbia County Prison.  Things

4   didn't go well there, and he got moved to Northern Neck.

5          After he got moved to Northern Neck, I was able to set

6   up phone conferences.  I was also able to set up video

7   visitation, and I was able to communicate directly with

8   Mr. Brown, through video visitation.  And on one occasion I

9   went to Harrisburg and I met with Mr. Clancy and I brought my

10  iPad in, and we video visited him together in his office in the

11  federal building.

12         There's a couple of things I want the Court to know

13  about as a result of my short experience with Mr. Brown.

14         I note the difference in his own personality comparing

15  today with when I first met him and the progress that he has

16  made throughout and the lack thereof.

17         He seemed nervous.  He seemed fast paced.  He wanted

18  to jump from one decision to the next without thinking it out.

19  And that's the way he presented himself to me throughout the

20  process early on in my representation.

21         When he got moved to Northern Neck, due to his own

22  behavior there, they took it upon themselves and felt it

23  necessary to isolate him.  And when I say isolate him; they

24  took away his clothes, they took away his mattress, they took

25  away his sheets, they took away his pillow.  He just had the

```
 1   frame, the bed frame, and a, what they call, suicide smock,
 2   which is like a vest with velcro.  And that's it.  That's the
 3   way he spent much of his time there.
 4          Five days a week he would be in there 24 hours a day.
 5   Two days a week they would allow him to out to take a shower
 6   and make a phone call.  He was in a belly chain, which went
 7   around his waist and his arms were held together.  He was
 8   allowed to ambulate.  They did not keep chains on his feet
 9   while he was in the cell.
10          At one point, and I saw this, as I had a video meeting
11   with him, they had what they call restraint gloves on him.  And
12   on the video call they looked like tubular oven mitts, and they
13   were on both of his hands.  He had the belly chain on.  No
14   clothes.  Just the suicide smock.  And he wasn't even allowed
15   to have a chair in the room.  He was bent over on the phone
16   trying to hold the phone with the gloves on and talk to me for
17   our attorney/client conference.
18          He endured all that for a long period of time, at
19   least 30 days with the gloves.  And when he finally -- I was
20   telling Mr. Clancy about this.  When he finally started
21   receiving regular medication, which he took -- and he tells me
22   he's on ten milligrams of Olanzapine twice a day and
23   300 milligrams of lithium, twice a day, and that's been going
24   on for about a month, maybe a little bit longer than that, I
25   have noted a change in his personality and his countenance.
```

1          And I found out last night, when I met with him in the

2     Lycoming County Prison, that he had been taking this

3     medication.  In the past he had been prescribed medication for

4     his mental disorders, but he sometimes wouldn't take them or he

5     would only take part of the dosage.  As a result, I really

6     think it has an impact of his regular usage of those two drugs,

7     that he's a different man today.

8          When I met with him last night, he seemed calm and at

9     peace.  He went through an enduring journey.  Yesterday at 1:30

10    in the morning he was awakened, left for Pennsylvania for a van

11    at 5:30 a.m. and made various stops along the way.  And I

12    encountered him last night, and he had been up for quite a

13    while, and he still seemed peaceful and calm and was allowed to

14    move around the prison and obeyed the orders of the officer

15    when we were finished with our attorney/client conference.  I

16    thought there was a remarkable change that happened.

17         I believe the change occurred before yesterday.  I

18    believe when Mr. Clancy and I met with him for the video

19    presentation in his office, I noted the change in him.  I

20    didn't know he had been prescribed certain drugs and he was

21    taking them on a regular basis.

22         So I might say I'm quite proud of the way he has

23    adapted and changed.  And I think that's something the Court

24    can consider in terms of the factors under 18 U.S.C., Section

25    3553 in determining what the best sentence is in this case.  He

1    obviously needs a lot of help.  He needs to take his

2    medications, and he needs to address his behavior through the

3    use of medications and through more therapy.  He had been

4    getting therapy when he was sent out for the psychological

5    evaluations in Springfield, and it was noted in the evaluation

6    that it had some effect to the positive.

7         So I want the Court to seriously consider what I have

8    said here today, and I want the Court to consider the

9    statements that my client's sister is going to make, and I'll

10   state on behalf of Gloria Brown, and then I'll give my client

11   the floor to address the Court.

12        THE COURT:  Go right ahead.

13        MR. LORD:  I think the next witness I'll call, Your

14   Honor, is Kristin Allen.  Kristin, if you could come forward,

15   with the Court's permission, and stand at the podium and just

16   read to the judge what you want to say.  Introduce yourself and

17   your relationship to Mr. Brown.

18        THE WITNESS:  Your Honor, my name is Kristin Allen.

19   I'm Jared's older sister.  Judge Brann, eight years ago on

20   yesterday's date, I attended Jared's eighth grade moving-up day

21   ceremony.  Both of my parents had to work, as they usually did,

22   but I was still able to attend.  He received his certificate

23   and I wondered where he would be ten years later.

24        Little did I know that in those ten years I would be

25   writing you this letter.  I didn't know that he would spend

both his 18th and his 21st birthdays locked up.  I didn't know
he would miss my wedding.  I didn't know that while writing
this I would struggle to find recent memories of him that
didn't involve handcuffs or a glass plating between us.

For me, he is still a chubby little kid who wanted to
hang out in my bedroom.  He's still a dirty little boy playing
at the playground near our house, his whining and fighting
because he wants five more minutes in the pool before we had to
go home.  I also know that he's here today because of the
things that he has done and the choices that he has made.

I don't believe he's ever meant to hurt anyone.  In
fact, I can't recall him ever actually hurting someone.  His
words and the choices he has made reflect poorly on the person
that he is.  I understand that there must be consequences for
his actions.  But he isn't just a statistic in a jail cell.
He's a kid, as grown up as he may be, that needs love and
attention and the right amount of effort.

I hope that I am able to give him a fresh start when
he rejoins us.  I want to put in the time and effort that it
takes to keep him on the right path, no matter what.  He has
had a difficult road and a difficult road ahead, and I know
he's more than this.  I drove 200 miles to come here today to
tell you that someone is here and someone is waiting for him
when he's ready to come home.  Life has so much more to offer
than what he has seen, and I don't want him to miss another

1    moment.

2              Thank you.

3              THE COURT:  Thank you very much.

4              MR. LORD:  Thank you.  Your Honor, Gloria Brown is in

5    the courtroom today.  She's my client's mother.  She sent me an

6    e-mail and asked me just to read it to the Court.

7              THE COURT:  Go right ahead.

8              MR. LORD:  It says, Jared was a kind of an introverted

9    child.  He was shy.  Didn't like being in crowds.  He didn't

10   want to join clubs.  He listened to me most of the time.  I

11   think his friends were a bad influence on him.  He was a

12   follower.  And she wanted you to know that he was diagnosed

13   with ADHD when he was in kindergarten.  And she is here today

14   for him.

15             THE COURT:  Good.  Thank you very much.  Anything

16   further, Mr. Lord, before I have allocution from Mr. Brown?

17             MR. LORD:  No, Your Honor.

18             THE COURT:  Thank you.

19             Mr. Brown, you now have the right of allocution, which

20   is the right to address this Court yourself regarding what you

21   believe I should consider in imposing a sentence today, and for

22   that matter to request a specific sentence.  Mr. Brown, you

23   don't have to speak to me.  If you would like to speak to me

24   directly, you may do so.  Alternatively, if you have a

25   statement or remarks that you would like to read to me or have

1    Mr. Lord read to me in your stead, you may do so at this time.

2              THE DEFENDANT:  I just have something quick.  I just

3    want to let you know that when I made the threats, I was

4    hopeless and hopeless about myself.  I didn't know where to go

5    when I got out.  I was scared.  Besides, I know I committed a

6    crime.  And I'm sorry.  That's it, Your Honor.

7              THE COURT:  Thank you.  Thank you for speaking to me.

8              Mr. Clancy, what is the Government's position with the

9    Court's disposition of this case today?

10             MR. CLANCY:  Your Honor, the Government believes, as

11   the Court knows, that the guidelines calculations are

12   appropriate, and the Court has before it a correctly-calculated

13   range of 57 to 60 months.

14             This, I think, is a difficult case.  It is clear to

15   all of us that Mr. Brown has significant psychological

16   challenges.  From my first contact with him in this case until

17   now, I have seen significant improvement.  When the first

18   psychological exam was done in this case, it was recommended

19   that he undergo dialectical behavioral therapy.  That was done.

20   And the belief, at the conclusion of that round of therapy, was

21   that he had made progress.

22             But he very quickly slipped into his old bad behavior.

23   And that ended up with the problem Mr. Lord referred to at

24   Columbia County Prison.  It landed him in Northern Neck,

25   outside of Richmond, Virginia, where he encountered other

1    problems and actually incurred a charge, a criminal charge

2    there, for making a false report.  And he pled guilty to that

3    and was sentenced.

4         It was extraordinarily concerning to the Government

5    that during the time we were trying to negotiate a resolution

6    to his case, he found it appropriate to make more threats.

7    That is, as the Court knows, the main reason the Government

8    feels that he should not get credits for acceptance of

9    responsibility.  It's signaled to the Government that Mr. Brown

10   was still engaging in the same kind of serious criminal conduct

11   that brought him here in the first place.

12        When I had that video conference with Mr. Brown and

13   Mr. Lord in my office, as Mr. Lord said, I, too, noticed a

14   change.  He was coherent.  He was reasonable.  We had a short

15   discussion about the possible progress of the case.  We had a

16   discussion about what might happen at a trial.  He was lucid.

17   And he told us that he would do his best to conduct himself

18   with appropriate behavior from that point on.

19        And it appears, from everything I know, that he has

20   done that.  From the time we had that video conference until

21   now, he was released from restricted housing in Northern Neck.

22   I know of no incidents whatsoever from that point until now.

23   So it is clear -- it appears clear to me, to the Government,

24   that he has the ability to behave appropriately.

25        At the same time, his inappropriate behavior is most

1    serious.  Making threats against the President of the United

2    States, the highest government officer in our government, is a

3    most serious matter.  And I believe he knows it.  He has had

4    incrementally more severe punishments for engaging in that

5    behavior.

6              When he was first prosecuted in the Western District

7    of New York, there was an agreed-upon sentence of 15 months.  A

8    bit of a gift to Mr. Brown, who I think had a much higher

9    guideline range at that time.

10             He was back in front of the Western District of New

11   York court on a supervised release revocation for the same kind

12   of conduct.  And an incrementally more severe sentence of 24

13   months was imposed.  That apparently did not teach Mr. Brown,

14   through incarceration, the error of his ways.

15             The Court now has before it a 57 to 60 month guideline

16   range.  The Government believes that a sentence within that

17   range would be appropriate in this case.  But at the same time

18   the Government could well see the Court offering Mr. Brown a

19   downward variance to some small degree.

20             But whatever sentence the Court metes out in this case

21   must send a clear message to Mr. Brown that he has to stop this

22   kind of criminal behavior, and it also must send a message to

23   anyone else who would ordain to issue a threat against the life

24   of the President of the United States, so that they might see

25   how they will be treated by the federal judicial system.

1              So of course, the Government leaves it to the Court to

2    fashion an appropriate sentence.  I do believe the guideline

3    range is appropriate.  A sentence in that range would be

4    appropriate.  But I do well see how the Court might want to

5    give Mr. Brown the benefit of the variance.

6              Thank you, Your Honor.

7              THE COURT:  Very good, sir.  Thank you.  Are there any

8    other matters regarding the pre-sentence report itself that

9    should be resolved prior to the imposition of sentence?

10   Mr. Lord?

11             MR. LORD:  No, Your Honor.

12             THE COURT:  Mr. Clancy?

13             MR. CLANCY:  No, Your Honor.

14             THE COURT:  Are there any other matters, Mr. Brown,

15   that you would care to raise with the Court before I impose

16   sentence today?

17             THE DEFENDANT:  No, Your Honor.

18             THE COURT:  Very well.  The sentence then that I'm

19   about to impose complies with the purposes set forth at Title

20   18 of the United States Code at Section 3553(a)(2).  It

21   reflects the seriousness of this offense.  It promotes respect

22   for the law.  It provides just punishment for the offense.  It

23   affords adequate deterrence to criminal conduct and protects

24   the public from further crimes of this defendant and provides

25   Mr. Brown with any needed educational or vocational training,

1   medical care or other correctional treatment in the most

2   effective manner.

3       The sentence also reflects this Court's full

4   consideration of all factors relevant to the sentencing

5   determination including the nature and the circumstances of the

6   offense, the history and characteristics of this defendant, the

7   kind of sentences available, the advisory sentence prescribed

8   by the United States Sentencing Commission Guidelines Manual,

9   the need to avoid unwarranted sentencing disparities among

10  defendants with similar records who have been found guilty of

11  similar conduct, and the need to provide restitution to any

12  victims of the offense.

13      Regarding the nature and the circumstances of the

14  offense; Jared Marc Brown was an inmate at the United States

15  Prison in Allenwood serving a supervised release revocation

16  sentence imposed in the Western District of New York related to

17  a conviction for making a threat to kill the President of the

18  United States in 2015.

19      On June 14, 2017, Mr. Brown sent an e-mail within the

20  prison system stating his intent to blow up the prison and kill

21  both the current President of the United States, Donald J.

22  Trump, and former president, Barack H. Obama.

23      A search of Mr. Brown's cell revealed a note in which

24  Mr. Brown stated that he would kill Presidents Trump and Obama

25  as well as the Secret Service agent involved in his New York

1   case.  The defendant also had the makings of a knife in his

2   cell.

3          The matter was referred to the Secret Service through

4   the Federal Bureau of Investigation.  Mr. Brown was interviewed

5   by Secret Service agents and admitted to making the threats.

6   He backed off the threat against President Obama because

7   President Obama was no longer the president of the United

8   States.  Mr. Brown would not retract the threat made against

9   President Trump or the Secret Service agent.

10         Regarding the history and characteristics of the

11   defendant; it appears that Mr. Brown has a history of drug use

12   and mental illness, including official diagnoses of antisocial

13   personality mood disorder, intellectual disability and has

14   disclosed that he has, in the past, had thoughts of suicide.

15         While incarcerated, including amongst his violations,

16   were instances of tattooing or self mutilation.  However,

17   Mr. Brown's prison conduct record also shows that he committed

18   numerous violations involving harm to others, including assault

19   and destroying property.

20         Mr. Brown's conduct extends beyond prison walls.

21   Mr. Brown's extensive criminal history includes convictions for

22   harassment and giving false reports.  Indeed, his criminal

23   history category of six is the highest category recognized by

24   the guidelines.

25         This is also not the first time that Mr. Brown has

1    committed a crime that brings him before this Court today.  He

2    has previously made threats to kill others, including the

3    President of the United States.  In fact, Mr. Brown has charges

4    currently pending against him in what I have noted as the

5    Northern District of New York for similar conduct.

6          Given this pattern of behavior, there is a need to

7    help Mr. Brown acquire respect for the law, to afford him

8    adequate deterrence, because he continues to re-offend, to

9    protect the public from further creams, to reflect the

10   seriousness of the offense he has committed, and to provide

11   just punishment for it.

12         Regarding the kinds of sentences available for the

13   Court, I note that the maximum penalty for the offense of

14   threatening the life of the President of the United States, in

15   violation of Title 18 of the United States Code at Section 871

16   is five years of imprisonment, a fine of $250,000, and three

17   years of supervised release.

18         Regarding the advisory sentence prescribed by the

19   United States Sentencing Commission's Guidelines Manual, I have

20   already noted that the defendant's criminal history category

21   here is six, his offense level is 18, and the guideline range

22   of imprisonment is between 57 and 60 months.

23         Imposing a guideline sentence can help avoid

24   unwarranted sentencing disparities among defendants with

25   similar records who have been found guilty of similar conduct.

1   I note, however, that the sentencing guidelines are merely

2   advisory.

3           After balancing the factors of Section 3553(a) and

4   given this Court's full consideration of each of those factors

5   in the instant case, the Court finds that a sentence about to

6   be imposed to be reasonable, appropriate and not greater than

7   necessary to meet sentencing objectives, and that in this case

8   a downward variance is warranted.

9           The Court will impose the following sentence.

10          Mr. Brown, are you able to stand up?  Please rise.

11          Pursuant to the Sentencing Reform Act of 1984, it is

12  the judgment the Court that the defendant, Jared Marc Brown, is

13  hereby committed to the custody of the United States Bureau of

14  Prisons to be imprisoned for a term of 42 months.

15          The Court finds that this defendant does not have the

16  ability to pay a fine.  It is ordered, however, that this

17  defendant shall pay to the clerk of the United States District

18  Court a special assessment of $100 due immediately.

19          As this defendant has a previously-imposed term of

20  supervised release, and since terms of supervised release must

21  run concurrently, pursuant to Title 18 of the United States

22  Code at Section 3624(e), the Court does not impose a further

23  term of supervised release.

24          This defendant shall cooperate in the collection of a

25  DNA sample.

1          Mr. Brown, it is my determination that the sentence

2     imposed today is sufficient but not greater than necessary to

3     comply with the purposes set forth at Title 18 of the United

4     States Code at Section 3553(a)(2).  I will note that I have

5     considered all seven factors as set forth at Title 18 of the

6     United States Code at Section 3553(a).

7          Recognizing that the guidelines and policy statements

8     and amendments to the same, as referenced at Title 18 of the

9     United States Code at Section 3553(a)(4) and (5), are advisory

10    only, the Court finds their application in this case reasonable

11    and appropriate under the totality of the circumstances.

12         Mr. Brown, I advise you now of your right to appeal

13    your conviction and sentence to the United States Court of

14    Appeals for the Third Circuit.  With few exceptions, any notice

15    of appeal must be filed within 14 days.  If you are unable to

16    pay the costs of an appeal, you may apply for leave to appeal

17    in forma pauperis, which means that if approved, counsel will

18    be appointed for you, and you will not be required to pay any

19    costs.

20         Mr. Lord, is there a request for a specific prison

21    designation for Mr. Brown?

22         MR. LORD:  Yes.  I thought about that, Your Honor.  I

23    believe he's going up to New York.  His family is up in New

24    York.  So he would prefer to be in a facility that is

25    appropriate for him that is closest to his family in New York.

1              THE COURT:  His family is Lockport.  Is that Niagara
2    County, New York?
3              MR. LORD:  I believe it is.  Yes, it is.
4              THE COURT:  Mr. Brown, I will make that request of the
5    Bureau of Prisons as a place of incarceration for you.  They
6    will take into account my recommendation.  It's a matter,
7    frankly, of space availability as much as anything else.  But I
8    will certainly make that recommendation to the Bureau of
9    Prisons in my dispositional report that will be issued before
10   the day is out today.
11             Mr. Clancy, this was a one-count indictment, without
12   any other counts to dismiss.  Am I right in saying that?
13             MR. CLANCY:  That's correct, Your Honor.
14             THE COURT:  Very good.  Is there anything else,
15   Mr. Clancy, on behalf of the Government with regard to
16   Mr. Brown's case?
17             MR. CLANCY:  No, Your Honor.  Thank you.
18             THE COURT:  You're welcome.
19             Mr. Lord, anything else regarding your man?
20             MR. LORD:  No, Your Honor.  Thank you.
21             THE COURT:  So Mr. Brown, let me make two
22   observations.  Number one -- or three maybe.  One, your family
23   is here and they care about you.  I think they love you.  That
24   is not always the case in these sentencing hearings.  And I do
25   this day in and day out.  So frequently the defendant appears

1   and there is no one else; I mean other than the court staff,

2   defense counsel, the prosecutor, the marshals, probation

3   office, the court security officer and me and the defendant, of

4   course.  But your family is here.  They care about you, and I

5   think we would like you to return to them at some point.

6            Right at the moment you seem to be serving in prison

7   on maybe almost an endless series of prison on the installment

8   plan.  You're imprisoned.  You violate.  You're back in prison.

9   You misbehave.  At some point I think you've got to decide that

10  may not be for you.  Although, maybe it is.  I don't know.  I

11  don't think so.  I think your family would like you to return

12  to them.

13           Second, you've got to stop making these threats.  It's

14  got to end.  Apparently there are charges pending in one of my

15  sister courts in New York, whether it's Northern or Western, I

16  don't know.  We'll figure that out.  You've got to stop making

17  threats.  Just cut it out.  It's not appropriate.  You can't

18  threaten the President.  You can't threaten federal officials.

19  You can't threaten federal judges.  You can't threaten Secret

20  Service agents, FBI agents, prosecutors.  It's against the law.

21  It should be obvious.

22           Third, if you are, in fact, taking some medication

23  that will stabilize you, you should keep at it, I think.  I

24  have no degrees in pharmacology, but I have practiced law and

25  been a judge for almost 30 years, and my observation, as a

1    non-expert, is that often is helpful.  And apparently it is in

2    your case.

3          So again, I'm not diagnosing you, and I'm not

4    prescribing the medication.  But I would strongly urge you to

5    keep at it, and I think you may be on the road to some level of

6    recovery, if you do so.

7          Stop making these threats.  You are going to go off to

8    the Western District of New York and somebody is going to chat

9    with you up there and give you the same guidance.

10         I wish you good luck.

11         Anything else, Counsel?

12         MR. CLANCY:  No, Your Honor.  Thank you.

13         MR. LORD:  No, Your Honor.

14         THE COURT:  Court is adjourned.

15         THE COURTROOM DEPUTY:  All rise.

16               (11:45 a.m., court adjourned.)

17

18

19

20

21

22

23

24

25

```
 1                      REPORTER'S CERTIFICATE

 2

 3           I, Lori A. Fausnaught, RMR, CRR, Official Court

 4   Reporter for the United States District Court for the Middle

 5   District of Pennsylvania, appointed pursuant to the provisions

 6   of Title 28, United States Code, Section 753, do hereby certify

 7   that the foregoing is a true and correct transcript of the

 8   within-mentioned proceedings had in the above-mentioned and

 9   numbered cause on the date or dates hereinbefore set forth; and

10   I do further certify that the foregoing transcript has been

11   prepared by me or under my supervision.

12

13
                              s/Lori A. Fausnaught, RMR, CRR
14                            -----------------------------
                              Lori A. Fausnaught, RMR, CRR
15                            Official Court Reporter

16

17   REPORTED BY:

18        LORI A. FAUSNAUGHT, RMR, CRR
          Official Court Reporter
19        United States District Court
          Middle District of Pennsylvania
20        240 West Third Street, Suite 446
          Williamsport, PA 17701
21

22
               (The foregoing certificate of this transcript does
23   not apply to any reproduction of the same by any means unless
     under the direct control and/or supervision of the certifying
24   reporter.)

25
```